STATE OF NORTH CAROLINA v. RANDALL DWIGHT SHOEMAKER

No. 8522SC931

(Filed 1 April 1986)

1. **Criminal Law § 128.1— improper comments by prosecutor—mistrial denied— no error**

    The trial court did not abuse its discretion in an assault and murder prosecution by not declaring a mistrial on its own motion after improper and prejudicial remarks by the prosecutor where defendant did not object to several of the comments and did not move for a mistrial; the court orally reprimanded the prosecutor; and the statements by the prosecutor which failed to draw a response from the judge were not prejudicial and some could not even be considered improper.

2. **Homicide § 9.2— motion to dismiss based on self-defense denied—no error**

    The trial court did not err by denying defendant's motion to dismiss charges of assault and murder or to set aside verdicts of voluntary manslaughter and assault with a deadly weapon inflicting serious injury based on self-defense where the State's evidence showed that defendant had exited the store where the victims assaulted him and had at least three minutes to make his escape; all of the evidence was that neither victim had a weapon and that only one victim had beaten defendant in the store; the jury was instructed on perfect and imperfect self-defense; and the evidence was sufficient to support the verdict.

3. **Criminal Law § 73— testimony concerning statement of victim—hearsay—not within party opponent admission exception**

    The trial court did not err in an action for murder and assault by sustaining the State's objection to questioning about a statement the witness had allegedly heard one victim make. The hearsay exception for admissions of party opponents is available only for statements made by parties to a lawsuit; an adverse witness, even the complaining witness at a criminal trial, is not a party to the action. N.C.G.S. 8C-1, Rule 801(d)(A).

4. **Criminal Law § 89.4— prior statement of victim—excluded—no error**

    The trial court did not err in a prosecution for murder and assault by not allowing defense counsel to question one victim regarding a statement he had allegedly made that he "was sorry he had gotten his brother killed." The victim denied in a *voir dire* ever making such a statement; defense counsel could not show a good faith basis for believing it had been made; defense counsel had no

State v. Shoemaker

evidence showing to whom the statement had been made; there was no impeachment value attributable to the statement; and the statement was of limited probative value and was conceivably highly prejudicial to the State's case.

**5. Homicide § 19.1— self-defense—character of victims—specific example of misconduct excluded—no error**

The trial court did not err in a murder and assault prosecution in which defendant claimed self-defense by not allowing a State trooper to testify about a specific instance of misconduct of the victims indicating their propensity for violence where there was no evidence showing that defendant was aware of the incident. N.C.G.S. 8C-1, Rule 405(b).

**6. Homicide § 28.3— self-defense—instruction on excessive force—no error**

The trial court did not err in a prosecution for murder and assault in which defendant claimed self-defense by not instructing the jury that the number of assailants involved should be considered in determining whether defendant utilized excessive force where the jury was instructed to consider "all the circumstances" and where all of the evidence indicated that there were separate assaults by two individuals rather than a single assault by multiple individuals.

APPEAL by defendant from *Seay, Judge*. Judgments entered 18 April 1985 in Superior Court, IREDELL County. Heard in the Court of Appeals 10 February 1986.

Defendant was charged in proper indictments with murder and assault with a deadly weapon with intent to kill inflicting serious injury. These charges arose out of an incident on 24 August 1984 in which defendant was involved in a fight with two brothers, Thomas and Larry Cass. The fight ended when defendant shot and killed Thomas then shot and seriously wounded Larry. Defendant admitted to shooting the brothers but claimed self-defense. The jury found him guilty of voluntary manslaughter in the death of Thomas Cass, and guilty of assault with a deadly weapon inflicting serious injury for the shooting of Larry Cass. The judge imposed the presumptive terms for each offense (six and three years, respectively), to run consecutively. Defendant appeals. Additional facts, as necessary, are set out in the opinion.

*Attorney General Lacy H. Thornburg by Assistant Attorney General John F. Maddrey for the State.*

*Mark T. Davis, and Edmisten and Weaver by Reagan H. Weaver, for defendant-appellant.*

PARKER, Judge.

[1]  In his first assignment of error, defendant argues that the trial court erred in failing to declare a mistrial, on its own motion, after improper and prejudicial remarks by the prosecutor. During the trial, the prosecutor made attempts to link defendant and his attorneys with illegal gambling which had been taking place at the scene of the shootings by use of a video poker machine. The prosecutor, at various times, referred to one of defendant's attorneys as "that video lawyer." Also, during the direct examination of defendant by his attorneys, the prosecutor interrupted more than once with snide remarks. One example is that after defendant testified he had hidden the guns used in the shooting, before defendant's attorney had a chance to ask another question, the prosecutor interrupted with, "Why don't you ask him why he did that?" Usually when such a comment was made, though, the trial judge admonished the prosecutor that such conduct was improper.

Defendant asserts that the remarks by the prosecutor unduly prejudiced him and that the trial court's admonitions were insufficient to cure the damage. Defendant, however, failed to object to several of the prosecutor's comments and did not, at any time, move that a mistrial be declared. The conduct of a trial and the control of unfair tactics by either party is left largely in the discretion of the trial judge. *State v. Holmes*, 296 N.C. 47, 249 S.E. 2d 380 (1978). When the prosecutor made the egregious comments, the trial judge quickly stepped in and verbally reprimanded the district attorney. "Ordinarily, such action by the trial judge cures the impropriety of counsel since the presumption is that the jurors will understand and comply with the court's instructions." *Id.* at 52, 249 S.E. 2d at 383. The statements by the prosecutor which failed to· draw a response from the trial judge were not prejudicial and some could not even be considered improper. We conclude, therefore, that the trial judge did not abuse his discretion by failing to declare a mistrial *ex mero motu.*

[2]  Defendant's second assignment of error is that the trial judge erred in denying defendant's motion to dismiss the charges at the close of the evidence. Defendant contends that self-defense had been established as a matter of law, even when the evidence is viewed in the light most favorable to the State. We disagree.

When so viewed, the evidence shows that defendant was in the 901 Grand Prix truck stop off I-77 in Iredell County on business. His job was to collect the coins from the video machines located there, as well as do minor, routine maintenance on the machines. While defendant was chatting with the manager of the store, Larry and Thomas Cass came into the store. Both men were loggers and were large and very muscular. Larry immediately went up to defendant and accused him of "fixing" the video poker game so that the store would always win. Larry hit defendant in the face, then got him in a headlock and began beating defendant severely. The store manager threatened Larry with a stick whereupon Larry released defendant and chased the manager through the store. Both brothers began vandalizing the store by breaking video machines, throwing bottles and knocking the cash register onto the floor. While this was going on, the manager's wife walked in and threatened to "call the law." Larry Cass took a swing at her, barely missing, but knocking her glasses off. Thomas made Larry apologize to the lady and the brothers moved to leave. As Larry walked out of the door, though, he swung around and put his fist through the store's plate glass window, severely cutting his arm. The brothers walked to their truck, then returned to the store to retrieve Larry's hat. No one saw defendant between the time Larry released him to chase the manager until Larry and Thomas walked out of the store the second time after finding Larry's hat.

As they walked out of the store that second time, the brothers saw defendant in his truck and heard him yell something. Thomas ran over to defendant's truck and jumped on the hood, yelling something like, "Do you want some more?" Larry, nursing his severely cut arm, was several feet behind him. Defendant then got out of his truck and shot Thomas Cass with a single blast in the chest with a .12 gauge shotgun, killing him. Larry was still coming toward defendant and was about four feet from him when defendant turned on him and shot him five times in rapid succession with a .22 caliber automatic pistol. Larry survived, but is permanently paralyzed from the waist down.

Defendant then got back in his truck and drove to his father's house where he hid the guns and called his lawyer.

State v. Shoemaker

In order for a defendant to be entitled to dismissal of the charges based on a claim of self-defense, the evidence, viewed in the light most favorable to the State, must establish:

1. it appeared to defendant and he believed it necessary to kill in order to save himself from death or great bodily harm; and

2. defendant's belief was reasonable in that the circumstances as they appeared to him at the time were sufficient to create such a belief in the mind of a person of ordinary firmness; and

3. defendant . . . did not aggressively and willingly enter into the fight without legal excuse or provocation; and

4. defendant did not use excessive force, i.e., did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm.

*State v. Norris*, 303 N.C. 526, 530, 279 S.E. 2d 570, 572-573 (1981).

The resolution of a question of self-defense is squarely based on the reasonableness of defendant's action. This makes it an issue peculiarly within the province of the jury. *State v. Ealy*, 7 N.C. App. 42, 171 S.E. 2d 24 (1969). Whether the defendant's apprehension of harm was reasonable and whether defendant utilized a reasonable amount of force are both questions which should be answered by a jury. The fact that the jury did not acquit, but did find defendant guilty of the lesser charge of voluntary manslaughter indicates the jury believed defendant's apprehension to be reasonable but that he responded with excessive force, or that he willingly entered into the second confrontation, exercising an *imperfect* right of self-defense. *Norris, supra. See also* Note, Perfecting the Imperfect Right of Self-Defense, 4 Campbell L. Rev. 427 (1982).

The State's evidence showed that defendant had exited the store and had at least three minutes in which to get to his truck and make his escape while the Cass brothers first vandalized the store and then went back to search for Larry's cap. All the evidence showed that neither of the victims possessed a weapon and that Thomas had never touched defendant; only Larry had beaten

him. For the death of Thomas Cass, the trial judge instructed the jury on second degree murder, on voluntary manslaughter by way of an imperfect right of self-defense, *see Norris, supra,* and on not guilty based on self-defense. The jury was instructed on guilty of assault with a deadly weapon with intent to kill inflicting serious injury, guilty of assault with a deadly weapon inflicting serious injury and not guilty based on self-defense in the shooting of Larry Cass. There was ample evidence from which a rational juror could conclude that defendant was guilty of voluntary manslaughter and assault with a deadly weapon inflicting serious injury. This assignment of error is overruled.

Defendant also assigns as error the failure of the trial court to grant his motion to set aside the verdicts as contrary to the weight of the evidence. Such a motion is directed to the discretion of the trial judge and is reversible only upon a showing of abuse of that discretion. *State v. Hamm,* 299 N.C. 519, 263 S.E. 2d 556 (1980). As discussed above, there was sufficient evidence to support the verdicts and there was no abuse of discretion for the trial judge to let them stand. This assignment of error is overruled.

[3] Defendant's fourth and fifth assignments of error challenge two evidentiary rulings by the trial judge concerning the admissibility of a statement allegedly made by Larry Cass that he was "sorry he had gotten his brother killed." The first ruling on the statement came when defense counsel attempted to question Kenneth McCann, a witness for the State, about the statement. McCann had allegedly overheard Larry Cass make such a statement. The trial judge sustained the State's objections to the questioning because the statement was hearsay. Defendant contends that McCann should have been able to testify about the statement because, he argues, it was an admission of a party-opponent, excepted from the hearsay exclusion by North Carolina Rule of Evidence 801(d)(A). This argument is without merit. The exception in 801(d)(A) is available only for statements made by parties to the lawsuit. The declarant, Larry Cass, was not a party to the action. An adverse witness, even the complaining witness in a criminal trial, is not a party to the action. Thus, the witness was properly prohibited from testifying about a hearsay statement.

**[4]** The second ruling concerning the statement came when defense counsel cross-examined Larry Cass. The trial court held a *voir dire* out of the presence of the jury in which Cass denied ever making such a statement. The trial court refused to allow counsel to question Cass about the statement because counsel could not show a good-faith basis for believing it had been made. Defense counsel had no evidence showing to whom the statement had been made. The statement was of limited probative value and was conceivably highly prejudicial to the State's case. Defendant argues it was probative for the purpose of impeaching the witness Larry Cass. However, the *voir dire* showed Cass would have denied making the statement, and there was no evidence the statement had been made; therefore, there was no impeachment value attributable to the statement and defendant could not have been prejudiced by the trial judge's refusal to allow any questioning about the alleged statement. Defendant's fourth and fifth assignments of error are overruled.

**[5]** Defendant's sixth assignment of error is that the trial court erred in refusing to allow a defense witness, State Trooper David Blackwell, to testify about a specific instance of conduct of the victims which indicated their propensity for violence. Trooper Blackwell had already testified that the victims had a bad reputation as violent people who were prone to fight, especially when drunk. This testimony was permissible under G.S. 8C-1, Rules 404(a)(2) and 405(a). Defense counsel then asked the witness if he had had any personal experience with the brothers which indicated their violent character. Upon objection by the State, and after *voir dire*, the trial court ruled that Trooper Blackwell would not be allowed to testify concerning an incident in which he attempted to arrest Thomas and Larry Cass, and had been repeatedly assaulted by the brothers.

Under G.S. 8C-1, Rule 405(b), evidence of specific instances of conduct is admissible when proving character only if character "is an essential element of a charge, claim, or defense . . . ." In self-defense cases, the character of the victim for violence is relevant only as it bears upon the reasonableness of defendant's apprehension and use of force, which are essential elements of the defense of self-defense. *State v. McCray*, 312 N.C. 519, 324 S.E. 2d 606 (1985). Thus, the conduct becomes relevant only if defendant knew about it at the time of the shooting. *Id.* No evidence was

presented which showed defendant had been aware of the incident involving the Cass brothers and Trooper Blackwell, and the evidence of this incident was properly excluded.

[6] Defendant's seventh and final assignment of error is that the trial court erred in failing to instruct the jury that the number of assailants involved should be considered in determining whether defendant utilized excessive force. Such a charge was requested, but "a trial judge is not required to give requested instructions verbatim . . . he is required to give the requested instruction at least in substance if it is a correct statement of the law and supported by the evidence." *State v. Corn*, 307 N.C. 79, 86, 296 S.E. 2d 261, 266 (1982). In regard to the excessive force determination, the trial judge charged:

> In making this determination you should consider the circumstances as you find them to have existed from the evidence, including the size, the age, and the strength of the Defendant Shoemaker, as compared to that of Thomas Cass; the fierceness of the assault, if any, being made upon the Defendant; the reputation, if any, of Thomas Cass for danger and violence. The Defendant would not be guilty of any murder or manslaughter if he acted in self-defense, as I have defined it to be; and that the Defendant did not use excessive force under the circumstances.
>
> A Defendant uses excessive force if he uses more force than reasonably appeared to him to be necessary at the time of the killing. It is for you, the Jury, to determine the reasonableness of the force used by the Defendant under *all the circumstances* as they appeared to him at the time. (Emphasis added.)

This charge adequately informed the jury of the factors to be considered in determining whether the defendant used excessive force. The phrase "all the circumstances" clearly implies that the jury was to consider more than just the size, age, and the other things specifically instructed on.

Furthermore, all the evidence indicates that only Larry Cass assaulted defendant in the store and that only Thomas Cass assaulted defendant outside, while Larry was still some twelve to eighteen feet away. Clearly, defendant had adequate time to deal

with the assault by Thomas before turning to face a possible assault by Larry. There was no single assault by multiple assailants. There were separate assaults by two individuals. Thus, it was not prejudicial error for the trial judge to omit from his instructions that the jury should consider the number of assailants in determining whether defendant used excessive force.

Having examined all of defendant's assignments of error, we conclude that defendant received a fair trial in which there was

No error.

Chief Judge HEDRICK and Judge WEBB concur.