STATE OF NORTH CAROLINA v. KAREN ELAINE EVERETT

No. COA05-1197

(Filed 20 June 2006)

**1. Evidence— character—victim's propensity for violence— self-defense—neutral witness**

The trial court erred in a second-degree murder case by excluding a witness's testimony concerning the victim's propensity for violence, including the victim's prior violent behavior at a car dealership where he damaged property, because: (1) the evidence was relevant and admissible to show whether defendant's apprehension of death and bodily harm was reasonable; and (2) the error was prejudicial in light of defendant's assertion of self-defense, the witness was defendant's only neutral witness, and defendant's testimony regarding the car dealership incident would possibly be viewed by the jury as self-serving.

**2. Evidence— hearsay—character—victim's propensity for violence—state of mind exception—victim's plan or intent to engage in future act**

The trial court erred in a second-degree murder case by excluding defendant's testimony regarding an incident between the victim and defendant's former subordinate employee to show the victim's violent nature, because: (1) N.C.G.S. § 8C-1, Rule 103(a)(2) provides that an offer of proof is not necessary to preserve an issue for appellate review if the substance of the excluded testimony is apparent from the context within which the question was asked, and the grounds under which defendant sought to have this evidence admitted were apparent in the record from the context of the trial and the exchange; (2) defendant's testimony that her employee told her that the victim threatened to shoot up his house should have been admitted as further evidence of the victim's violent character to show defendant's fear of the victim was reasonable; and (3) the statement was not offered for the truth of the matter asserted, but instead to show that defendant's apprehension of death and bodily harm was reasonable.

**3. Evidence— prior crimes or bad acts—shot a dog**

The trial court erred in a second-degree murder case by admitting evidence that defendant once shot a dog, because: (1)

**STATE v. EVERETT**

[178 N.C. App. 44 (2006)]

whether defendant was knowledgeable about firearms or had experience shooting them does not make it more or less probable that she shot her husband in self-defense; (2) defendant admitted that she shot the victim with a pistol; and (3) if the State seeks to establish relevance on remand, the evidence is equally relevant to show the victim also shot and killed the dog.

Judge GEER dissenting.

Appeal by defendant from judgment entered 12 August 2004 by Judge Leon Stanback in Wake County Superior Court. Heard in the Court of Appeals 12 April 2006.

*Attorney General Roy Cooper, by Assistant Attorney General Thomas G. Meacham, Jr., for the State.*

*Amos Granger Tyndall, P.A., by Amos Granger Tyndall, for defendant-appellant.*

TYSON, Judge.

Karen Elaine Everett ("defendant") appeals from judgment entered after a jury found her to be guilty of second degree murder. We award defendant a new trial.

## I.  Background

### A.  State's Evidence

On 26 November 2000 at approximately 5:40 p.m., Wake County Sheriff's Deputy Joel Holt ("Deputy Holt") was serving warrants when he was dispatched to a call reporting a shooting at the 6100 block of Highway 401 in Fuquay-Varina. Deputy Holt arrived at the residence and saw defendant standing in the doorway and speaking on the telephone. As Deputy Holt walked into the yard toward the house, defendant entered her home. Deputy Holt went to the front door, identified himself, looked into the house, and saw a pistol laying on the coffee table. Deputy Holt identified himself again upon entering the house and heard a child crying, "My daddy, my daddy, I want my daddy." A blanket covered the child's head. Deputy Holt observed the body of Michael Everett ("the victim") in the hallway. The victim was lying on his right shoulder with his feet toward the kitchen and head toward the hallway. Deputy Holt detected no movement in the victim and observed a large puddle of blood on the floor. He testified defendant was calm, not emotional or upset, and was trying to prevent her

child from seeing the victim's body. He also testified defendant's clothes were not torn, contained no blood, and he did not observe marks on defendant's face or neck. Defendant straightforwardly acknowledged that she had shot the victim.

A volunteer fireman, Captain Lonnie Bridges ("Captain Bridges"), arrived at the scene. Captain Bridges observed pooled blood around the victim that appeared "congealed" and "old." The victim's body was cool.

Wake County Sheriff's Deputy James Landmark ("Deputy Landmark") arrived and asked defendant what had happened. Defendant responded that she did not want to talk with him in front of her daughter. Defendant's father-in-law came to the home and took custody of the child.

Defendant told Deputy Landmark that she and her husband, the victim, had been arguing for a couple of days after he accused her of seeing someone else. Defendant told Deputy Landmark her husband pushed her, threatened to kill her, and grabbed her by the throat. Defendant told the victim to "back off." The victim kept coming toward defendant, at which point she shot him.

Sergeant Gerald Baker ("Sergeant Baker") was the lead investigator at the scene and also interviewed defendant. Defendant told Sergeant Baker the victim had threatened to kill her and had put his hands around her neck. The victim told defendant, "I can kill you now, bitch." The victim came toward defendant in the kitchen. Defendant retrieved her gun from the living room. Defendant fired the gun toward the kitchen cabinets. The victim continued to come towards defendant and she fired the gun at him.

Agent Dave Edington ("Agent Edington") of the City-County Bureau of Investigation testified he recovered a bullet imbedded in the windowsill above the kitchen sink. Based on the method of entrance by the bullet, Agent Edington testified the gun was apparently fired from the living room near the Christmas tree.

Defendant's aunt, Eton Everett ("Everett"), also testified for the State. Defendant called Everett at 5:31 p.m. and told her, "call daddy and you guys get out here right away, I just shot Michael." Everett also testified defendant and the victim had suffered domestic problems over the years. Defendant had never told Everett she was afraid of the victim. Everett did not know of incidents where the victim had injured defendant. Everett never saw the victim act violently towards

anyone. She never observed the victim with a gun. Everett admitted she was married to the victim's brother.

Agent David Santora ("Agent Santora") testified as an expert witness in firearm identification. Agent Santora testified that a bullet hole on the victim's right shirt sleeve was consistent with a contact shot. The other bullet holes on the victim were caused by shots fired less than eighteen inches away.

Dr. Cheryl Szpak ("Dr. Szpak") performed the autopsy on the victim. Dr. Szpak testified that no alcohol was found in the victim's blood. One bullet had entered the victim's right biceps, traveled through the sternum and the heart, and lodged in the victim's lung. Another bullet entered the left chest area below the nipple, perforated the lung and diaphragm, and lodged close to the spine. The remaining bullet entered the victim's lower back to the right of the spine and lodged in his spinal canal. Dr. Szpak testified the cause of the victim's death was massive blood loss in the chest and a rupture of the heart resulting from gunshot wounds.

### B. Defendant's Evidence

Defendant testified she married the victim in 1988. In the early years of their marriage, the couple engaged in verbal and physical arguments. The victim would tear things up and defendant would try to "stay out of the way of it." Once in 1990, defendant was supposed to meet the victim after work, but defendant was unable to meet him. The victim accused her of leaving work with someone. The victim choked defendant and ripped her clothes. Defendant reported the incident to the police. The victim was charged with and convicted of assault.

Defendant also testified that there were "lots of incidents" in the early years of their marriage and that it was "easy for [her] to get away." Defendant slept in her office at times.

The couple engaged in another physical altercation in 1998. Defendant was helping her friend, Iris Bryant ("Bryant"), move a fish aquarium. Bryant owned a hair salon. Defendant was Byant's client and friend. Defendant turned her back and the victim jumped on her and pushed her through a screen door. The victim "banged" defendant's head against a wall and choked her. Bryant corroborated defendant's account at trial. Bryant testified the victim "came and grabbed [defendant] by the neck, and he swung her out the door to the back of the porch, and her body was against the wall, and he tore

off all her clothes." Defendant's breasts were exposed and she was "scarred up at the neck." Defendant obtained a domestic violence protective order against the victim. The victim was charged and convicted of assault on a female as a result of this altercation.

Bryant further testified the victim dropped defendant off at her salon a couple of months before the shooting. The victim took defendant's book bag out of the car, threw it at defendant, and called her a "bitch."

Defendant testified beginning in 2000 their arguments became more violent and the victim's temper worsened. The victim insisted that defendant was having extramarital affairs. One evening in November 2000, the same month as the shooting, defendant was asleep on the couch and awoke to find the victim holding an assault rifle pointed at her head. He told her he was going to "blow [her] head off." Defendant coaxed the victim into putting down the gun by telling him that the gun had not been cleaned and it could explode if he fired it.

Defendant kept problems in their marriage private because her aunt, Eton Everett, was married to defendant's brother. Defendant continued to live with the victim because she wanted her daughter "to have one more Christmas holiday with him as a family." She believed that the marriage would work if she "kept working at it."

During the day before the shooting, defendant and her daughter went to the movie theater with friends. When they returned home, the victim insisted defendant had been out with another man. The couple argued that evening. Defendant left and went to a female friend's house for a couple of hours. Later, she returned home and slept on the couch.

Defendant described the day leading up to the shooting as a "normal day." The victim came home and they argued again. Defendant laid down on the couch. When she tried to get up, the victim pushed her down and told her he "should have finished what he started . . . that he should have killed [her] when he had a chance." The victim told defendant he was not leaving the house and that she would only leave "in a body bag or on a stretcher."

Defendant got up and picked up the pistol because she wanted to "keep him off" of her. The victim saw the gun and stated, "What, you want to play with guns now?" The victim said he was going to get a gun and "kill everything [sic] up in there." Defendant testified the vic-

tim normally was "screaming and yelling" and "tearing things up" during prior arguments, but that he was "calm" and "cold" the evening of the shooting. Defendant further testified that she had never been more afraid of the victim.

Defendant testified she told the victim that she wanted to get her daughter and leave. The victim moved toward defendant and she shot at the kitchen window to scare him. The victim continued to move toward her. He refused to stop after she told him to. The victim moved toward her like he was going to grab her.

Defendant testified she believed the victim was going to take the gun away from her. At that point, defendant shot the gun at him. The victim did not initially react to the second shot defendant fired and continued to walk toward her. The victim turned toward the hallway and defendant continued to fire at him. Defendant testified she believed he was going to get a gun located in the hallway. Defendant did not think she had hit the victim. When the victim fell, defendant realized he had been hit. After he fell, she ran over to him, held his head in her lap, and called the victim's name. Defendant did not see any blood and did not know the extent of his injuries. Defendant testified she does not remember further events after the shooting, and does not remember placing the call to 911.

Defendant testified that she was not trying to kill the victim and stated, "I wanted to leave, and when he started coming toward me, I felt he was either going to go get his gun or he was going to take the gun from me." She further testified that she "just wanted him to stop."

Defendant's father, John Rowland ("Rowland") testified that he was aware of the couple's marital problems. Rowland recounted an incident in the early 1990s when the victim slapped defendant and threw her clothes into the yard. Rowland bailed the victim out of jail.

## C. State's Rebuttal Evidence

Eton Everett returned to the stand and testified about a 1998 incident where the victim had attacked defendant. Defendant told Everett that if she could have gotten her gun she would have shot the victim. Sergeant Baker also returned to the stand and corroborated that Everett had told him that defendant had said to her after the 1998 incident. Sergeant Baker's notes said, "[Everett] stated [defendant] told her she and [the victim] fought and [the victim] had to force [defendant] out of the front door because, quote, 'He knew I was going to get my gun and shoot his ass.' "

STATE v. EVERETT

[178 N.C. App. 44 (2006)]

Defendant was indicted for first-degree murder. The jury found defendant to be guilty of second degree murder. This Court vacated the judgement and ordered a new trial on 2 March 2004. *See State v. Everett*, 163 N.C. App. 95, 592 S.E.2d 582 (2004) (holding the trial court erred in failing to instruct the jury that defendant claiming self-defense had no duty to retreat). Defendant was retried and found to be guilty of second degree murder. Defendant was sentenced as a Prior Record Level I with no prior record points. Defendant presented evidence of multiple mitigating factors. The trial court made no findings of aggravation or mitigation and sentenced defendant to an active term within the presumptive range to a minimum of 135 months and a maximum of 171 months. Defendant appeals.

## II.  Issues

Defendant argues the trial court erred by: (1) excluding evidence of the victim's propensity for violence; and (2) admitting evidence of her prior conduct that was irrelevant and prejudicial.

## III.  Evidence of the Victim's Violent Character

[1] Defendant argues she should be granted a new trial because the trial court erred in excluding evidence of the victim's violent character. Defendant presented evidence that she shot the victim in self-defense. Defendant argues the trial court excluded specific instances of the victim's violent character that would have shown the reasonableness of her fear and why she used deadly force. We agree.

### A.  Virgil Rhodes's Testimony

Virgil Rhodes ("Rhodes") testified ·during *voir dire* that he worked at a used car dealership and had sold a car to the victim. The victim called the owner of the car dealership and complained the car's trunk would not remain latched. On 31 October 1999, the victim drove to the dealership after business hours and broke another car's windows. Rhodes was working late in the evening in his office when he heard glass shatter. Rhodes walked outside and saw the victim leaving the lot in the car he had purchased. The victim was arrested for damage to property. Defendant testified she knew of this incident. The trial court excluded this testimony, stating, "I don't see how this event is relevant in this case."

### B.  Character Evidence

Generally, evidence of the victim's character is not admissible to prove that the victim acted in conformity with his character on a par-

ticular occasion. N.C. Gen. Stat. § 8C-1, Rule 404(a) (2005). This rule has exceptions. Rule 404(a)(2) provides that "evidence of a pertinent trait of character of the victim of the crime offered by an accused" is admissible. N.C. Gen. Stat. § 8C-1, Rule 404(a)(2) (2005).

In *State v. Winfrey,* our Supreme Court discussed the two exceptions under this rule.

> Generally, evidence of a victim's violent character is irrelevant, but *when the accused knows of the violent character of the victim,* such evidence is *relevant and admissible to show to the jury that defendant's apprehension of death and bodily harm was reasonable.* Clearly, the reason for this exception is that, a *jury should,* as far as is possible, *be placed in defendant's situation and possess the same knowledge of danger and the necessity for action, in order to decide if defendant acted under reasonable apprehension of danger to his person or his life.*

> The second of the recognized exceptions to the general rule *permits evidence of the violent character of a victim because it tends to shed some light upon who was the aggressor since a violent man is more likely to be the aggressor than is a peaceable man.* The admission of evidence of the violent character of a victim which was unknown to the accused at the time of the encounter has been carefully limited to situations where all the evidence is circumstantial or the nature of the transaction is in doubt. The relevancy of such evidence stems from the fact that *in order to sustain a plea of self-defense, it must be made to appear to the jury that the accused was not the aggressor.*

298 N.C. 260, 262, 258 S.E.2d 346, 347 (1979) (internal quotations and citation omitted) (emphasis supplied).

Proof of the victim's character may be made "by testimony as to reputation or by testimony in the form of an opinion." N.C. Gen. Stat. § 8C-1, Rule 405(a) (2005). Proof may also be made by specific instances of conduct where "character or a trait of character of a person is an essential element of a charge, claim, or defense." N.C. Gen. Stat. § 8C-1, Rule 405(b) (2005).

"In self-defense cases, the victim's violent character is relevant only as it relates to the reasonableness of defendant's apprehension and use of force, which are essential elements of self-defense." *State v. Brown,* 120 N.C. App. 276, 277-78, 462 S.E.2d 655, 656 (1995) (citing

*State v. Shoemaker*, 80 N.C. App. 95, 101, 341 S.E.2d 603, 607, *motion to dismiss allowed and disc. rev. denied*, 317 N.C. 340, 346 S.E.2d 145 (1986)).

Defendant presented evidence she killed the victim in self-defense and tendered Rhodes as a witness. Rhodes's testimony regarding the victim's violent behavior at the car dealership, which was known by defendant, is relevant and admissible to show whether her "apprehension of death and bodily harm was reasonable." *Winfrey*, 298 N.C. at 262, 258 S.E.2d at 347.

### C. No Prejudicial Error

The State argues the trial court's exclusion of Rhodes's testimony was not prejudicial because defendant testified to the same incident on direct and redirect examination. *See* N.C. Gen. Stat. § 15A-1443(a) (2005) ("A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises."). We disagree.

On direct, defendant testified that she recalled an incident when the victim was arrested for damage to property. On redirect, defendant testified as follows:

Q: Do you recall an incident back in—on Halloween of 1999?

A: Yes. Yes, I do.

Q: Do you know what happened or did you find out what happened?

A: Michael had gotten upset and went to a car dealership and had busted out another car windows [sic].

Q: And—and was he charged with damaged property?

A: Yes, he was.

Q: And did he pay for the damages?

A: Yes, he did.

Q: During this period of time, did you—did you leave Michael after that?

A: I left after that.

Q: Why?

A: Because that wasn't generally what he done. It was a little weird. I got afraid. I though he needed a little cool-off period so I left to try.

Q: And how long did you leave for, do you remember?

A: Probably a couple of weeks.

Q: Do you know what he was mad about?

A: The trunk wasn't latching on the back of the car. He was upset about that. I actually didn't find out he busted out the windows till the—the dealer—the man, the manager that called me while he was gone with the child for Halloween and they went trick or treating at the mall. The manager had called and asked where he was at, and I said he wasn't there. He said do you know what he said—

PROSECUTOR: I'm going to object to what the manager said.

COURT: All right, overruled. I'll let it in.

A: Do you know what he just did, and I said no. He said well I'm going to call the police. He was just here busting out windows and I got witnesses to the fact that he did it. I tried to calm him down and said well, we'll pay for the damages etc., etc. and I said could I call him back.

And I called Michael and I asked him had something happened and he said no, nothing had happened. I said well the dealership man had just called here threatening to call the police. And at that point in time I don't think he thought anyone saw him, said have witnesses saying they saw you busting out windows.

So I called the man back and said that we would pay for it, and he said that he was still going to call the police to have a record of it.

DEFENSE COUNSEL: That's all the questions I have.

The jury in this case heard testimony from the following defense witnesses: defendant; John Rowland, defendant's father; Adele Rowland, defendant's mother; and Iris Bryant, defendant's friend. All of these witnesses were either parents of or closely associated with defendant. Rhodes, a car salesman, was the only witness defendant tendered at trial not closely associated with defendant.

Rhodes witnessed the victim's violent acts first hand. Rhodes's testimony would have provided the jury with the only evidence from a neutral source of the victim's violent character, a crucial element of defendant's claim of self-defense. The trial court erred in excluding Rhodes's testimony regarding the incident at the car dealership to show the victim's propensity for violent behavior. This error was prejudicial in light of defendant's assertion of self-defense, Rhodes being defendant's only neutral witness, and defendant's testimony regarding the car dealership incident possibly being viewed by the jury as self-serving.

### D.  Defendant's Testimony

[2] Defendant also argues the trial court erred in excluding defendant's testimony regarding an incident between the victim and defendant's former subordinate employee because it was admissible evidence of the victim's violent nature. We agree.

The following exchange occurred on direct examination of defendant:

Q: Okay. Did you have any problems with your work and Michael concerning your work at Wake Medical?

A: He had problems. He called quite a bit. He got into a verbal argument with one of my male employees.

Q: What was that over?

A: It was over me. He said that we were having an affair.

Q: What happened, or what was said, if you know?

A: I wasn't there. My employee paged me. I came back to the hospital, and he said he was very—

PROSECUTOR: Object as to what the employee said.

COURT: All right. Sustained.

Q: Did you talk to the employee in person or on the phone or—

A: In person.

Q: Without saying what he said, how did he act? What was his mental state?

PROSECUTOR: Objection

**STATE v. EVERETT**

[178 N.C. App. 44 (2006)]

COURT: Well, overruled as to what was in his mind. I'm sorry. Sustained as to what was in his mind.

. . . .

Q: How did he appear to you?

A: He was quite anxious because Michael had told him he was going to shoot up his house.

PROSECUTOR: Objection. Move to strike.

COURT: All right. Sustained. Motion allowed.

Defendant preserved this argument for our review. North Carolina Rule of Evidence 103 provides in pertinent:

(a) Effect of erroneous ruling.—Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

. . . .

(2) Offer of proof.—In case the ruling is one *excluding evidence*, the substance of the evidence was made known to the court by offer *or was apparent from the context within which questions were asked.* Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal.

N.C. Gen. Stat. § 8C-1, Rule 103(a)(2) (2005) (emphasis supplied).

An offer of proof is not necessary to preserve an issue for appellate review if the substance of the excluded testimony is apparent from the context within which the question was asked. *Id.*; *State v. Braxton*, 352 N.C. 158, 184, 531 S.E.2d 428, 443 (2000), *cert. denied*, 531 U.S. 1130, 148 L. Ed. 2d 797 (2001) ("Substance of the excluded testimony [must be] apparent from the context within which the question was asked."). "It is well established that an exception to the exclusion of evidence cannot be sustained where the record fails to show what the witness' testimony would have been had he been permitted to testify." *State v. Simpson*, 314 N.C. 359, 370, 334 S.E.2d 53, 60 (1985).

Here, the transcript clearly reveals the substance of the excluded testimony. Defendant testified that the victim told her former employee that he "was going to shoot up his house." The court

granted the State's motion to strike this testimony. Defendant was not required to make an offer of proof under Rule 103 because the substance of the excluded testimony was established and apparent.

Defendant did not argue in response to the State's motion and the trial court's ruling the specific grounds for admitting the testimony. However, the specific grounds were "apparent from the context." N.C. R. App. P. 10(b)(1) (2005). Defendant proceeded on a theory of self-defense in shooting the victim. She offered evidence throughout the trial of the victim's violent nature to show that her fear of the victim was reasonable. This testimony was clearly another example of the victim's violent nature to show the reasonableness of defendant's fear. The grounds under which defendant sought to have this evidence admitted are apparent in the record from the context of trial and the exchange. This issue was properly preserved under Rule 103(a)(2) of the North Carolina Rules of Evidence and Rule 10(b)(1) of the North Carolina Rules of Appellate Procedure.

Defendant's testimony that her employee told her that the victim threatened to "shoot up" his house should have been admitted as further evidence of the victim's violent character to show her fear of the victim was reasonable. *Winfrey*, 298 N.C. at 262, 258 S.E.2d at 347.

The State's argument that this evidence is inadmissible hearsay is without merit. Rule 803 sets forth exceptions to the hearsay rule. The Rule provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(3) Then Existing Mental, Emotional, or Physical Condition.—A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health) . . . .

N.C. Gen. Stat. § 8C-1, Rule 803 (2005). The statement from the victim to defendant's former employee falls under this exception to the hearsay rule. The statement was a statement of the victim's plan or intent to engage in a future act. *See State v. McElrath*, 322 N.C. 1, 17, 366 S.E.2d 442, 451 (1988) (telephone message written by a neighbor from the victim to his roommate that the victim was traveling to North Carolina with the defendant was admissible under Rule 803(3) because it was a statement of the victim's "then-existing intent to do

an act in the future"); *Braxton*, 352 N.C. at 190-91, 531 S.E.2d at 447 ("Moore's statement to McCombs that he was going to approach defendant about straightening out the victim's debt was admissible as evidence of Moore's then-existing intent to engage in a future act.").

The statement from defendant's former employee to defendant is not hearsay and was not "offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2005). The statement was offered by the defense as evidence of the victim's violent character to show defendant's "apprehension of death and bodily harm was reasonable." *Winfrey*, 298 N.C. at 262, 258 S.E.2d at 347. The statement was not offered to show that the victim and defendant's former employee had a confrontation where the victim actually threatened to kill defendant's former employee. It was instead offered for the jury to determine whether defendant's fear of the victim was reasonable under the circumstances. *See State v. Faucette*, 326 N.C. 676, 682-83, 392 S.E.2d 71, 74 (1990) (a murder victim's statement to her son that she did not want the defendant to come to her house because he had failed to pay her child support was not hearsay because it was not offered to prove the truth of the matter asserted, but to show the victim's "frustration and impatience with the defendant.").

The trial court erred in excluding Rhodes's testimony regarding the victim's violent behavior at the car dealership and defendant's testimony regarding the victim's threat to defendant's former employee that he was going to "shoot up" the employee's house.

## IV. Evidence of Defendant's Prior Conduct

[3] Defendant asserts the trial court erred in admitting evidence that she once shot a dog and argues this evidence was irrelevant and prejudicial.

Defendant filed a pretrial motion to exclude the evidence of the incident in which she shot a dog. Defendant argued this evidence constitutes impermissible character evidence. The State argued the incident is relevant to demonstrate defendant's ability to use a gun and the fact that she had used a gun in the past. The trial court denied defendant's motion and allowed the evidence to be admitted.

Defendant straightforwardly admitted to shooting the victim with the pistol plainly visible upon the officers' arrival at the scene. Whether or not defendant knew how to use a pistol was not contested.

Defendant testified regarding the incident:

Q: And do you recall making a statement at the time that you shot at a dog?

A: Uh-huh.

Q: Tell the jury about that.

A: We had a dog named Rambo. We had raised him from a puppy with my daughter. One day the neighbor and her husband came over and we went for daily walk with our children. And I heard the truck when it pulled up. And then I heard screaming and hollering and I heard the dog growling. And when I opened the door, she was in the screen door and her husband had ran back to the truck. The dog was biting her. Chased him off [sic]. He went to chase the other neighbors next door. Randy got her home because he didn't know how bad the bites were, and I went around back to get him because he was still chasing everybody, trying to bite, and I shot him.

Q: You shot the dog?

A: Yes, sir.

Q: Did you mean to shoot to kill him?

A: Yes, I meant to put him down, yes.

Q: And did he go down?

A: Yeah, I didn't kill him though.

Defendant testified on redirect examination that the dog was alive after she shot and her husband, the victim, later shot and killed the dog. Defendant further testified that she shot the dog to protect other neighbors from being bitten. Defendant argues this testimony was irrelevant and prejudicial, and serves no purpose but to disparage her in the eyes of the jury.

Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2005). On the record before us, we fail to see how this evidence was relevant to any issue in the case. Whether defendant was knowledgeable about firearms or had experience shooting them does not make it more or less probable that she shot her husband in self-defense.

Defendant admitted that she shot the victim with a pistol. Defendant is entitled to a new trial based on the trial court's exclusion of testimony of the victim's violent character. If the State seeks to establish the relevancy of defendant's shooting the dog upon any retrial, this evidence is equally relevant to show the victim also shot and killed the dog and the victim's knowledge and use of firearms and his ability to kill for the reasonableness of defendant's fear of the victim.

## V.  Conclusion

The trial court erred in excluding Rhodes's testimony of the victim's violent conduct at the car dealership and defendant's testimony regarding the victim's death threats to defendant's co-worker. The exclusion of this testimony prejudiced defendant's assertion of self-defense and her knowledge of the victim's violent character. We hold the exclusion of this evidence was preserved for appellate review and was prejudicial to defendant's assertion of self-defense.

On this record, we fail to see the relevance of evidence admitted over defendant's motion to excluded evidence that defendant had shot her dog. If relevance is established, it would appear equally relevant that the victim also shot and killed the dog. We reverse and remand for a new trial.

New trial.

Judge JACKSON concurs.

Judge GEER dissents by separate opinion.

GEER, Judge, dissenting.

Because I believe defendant received a trial free of prejudicial error, I respectfully dissent.

With respect to the exclusion of the testimony of Virgil Rhodes regarding the victim's damaging a car, I would hold that any error was harmless based upon my review of the record. First, defendant was allowed to testify fully regarding the incident, the victim's being charged in connection with the incident, and the effect of the incident on her. While defendant argues—and the majority agrees—that Rhodes would have provided the only evidence from a neutral source of the victim's violent nature, the car dealership incident was not

seriously disputed by the State and defendant introduced extensive testimony from other witnesses regarding the victim's physically violent character. Neither defendant nor the majority opinion demonstrates, in light of the substantial evidence admitted of the victim's violence towards defendant, how the exclusion of the Rhodes testimony, regarding violence to a car, gives rise to "a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a) (2005).

Notably, at the time of the initial ruling regarding Rhodes, the trial court indicated to defense counsel that he could ask the court to reconsider the issue later in the trial. Nevertheless, even though the court ultimately allowed defendant to testify regarding the incident, counsel did not then ask the court to permit the testimony of Rhodes to corroborate defendant.

I would observe, in addition, that the trial court precluded the testimony of Rhodes because the conduct involved property damage and no threat to any person—a decision I believe to be consistent with Rule 404 of the Rules of Evidence. Rule 404(a)(2) allows "[e]vidence of a *pertinent* trait of character of the victim of the crime." (Emphasis added.) I believe that the trial court could properly determine that the victim's willingness to damage a car was not "pertinent" to whether defendant's apprehension of death or bodily harm was reasonable.

I also cannot agree with the majority's conclusion that the trial court erred in excluding defendant's testimony that one of her employees had told her that the victim threatened "to shoot up" the employee's house. The majority holds that this statement was admissible because it falls within the exception to the hearsay rule set out in N.C.R. Evid. Rule 803(3) and because it was not offered to prove the truth of the matter asserted. While this may be true, defendant did not argue these bases for admission at trial and has not argued them on appeal. *See* N.C.R. App. P. 10(b)(1) ("In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context.").

The majority's discussion of the offer of proof requirements in N.C.R. Evid. 103(a)(2) is beside the point. The issue is not whether the nature of the intended testimony was apparent from the record, but rather whether defendant's trial counsel sufficiently identified for

the trial judge a basis under the Rules of Evidence for admitting the testimony. Once the State objected, defendant never argued to the trial court any basis at all for the admission of the testimony. Counsel simply stood silent in response to the State's objection. Silence does not comply with N.C.R. App. P. 10(b)(1).

Even if defendant had made some response at trial, the fact remains that he has not made any argument on appeal to address the State's hearsay contention. The basis for the majority opinion was not the subject of an assignment of error and cannot by any stretch be gleaned from defendant's appellate brief. Our Supreme Court has made plain that these arguments may not, therefore, form a basis for granting a new trial. *See Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005) ("It is not the role of the appellate courts . . . to create an appeal for an appellant."). Simply stated, the majority has created a basis for appeal for defendant.

Finally, I disagree with the majority opinion's holding regarding the admission of testimony that defendant shot a dog. I believe the majority has misunderstood the State's argument as to the evidence's relevance. The State was not focusing simply on whether defendant knew how to use a gun, but rather was arguing that because the victim knew that defendant could—and would—use a gun to kill, the victim would not have charged defendant while she was pointing a gun at him and had already fired once. The State argued in closing:

> If we have any such thing as common sense, say she's going to stand there with a .38 and we know she knows how to use it. She's already shot a dog, said she intended to kill it. She's taken target practice. *He knows she knows how to use that gun, which is another important thing when he's standing over here. He knows she's just not some person scared and she doesn't know how to use that gun. He's seen her shoot* and he know [sic] she carries it every day. She bought it and carried it in that book bag. *He knows that she can use that gun.*

(Emphasis added.) Thus, the State used *the victim's knowledge* of the dog shooting to suggest that defendant's version of what occurred was not credible. I believe the testimony was admissible for this purpose: to suggest that the victim would not have charged defendant.

For the foregoing reasons, I dissent from the majority's decision to grant a new trial. I would hold that defendant received a trial free of prejudicial error.