STATE OF NORTH CAROLINA v. KAHLIL JACOBS

No. COA08-564

(Filed 17 March 2009)

## 1. Homicide— felony murder—armed robbery—evidence sufficient

The trial court did not err by denying defendant's motions to dismiss a charge of first-degree murder that was based on felony murder where the State presented evidence that defendant approached the victim, demanded money from him, and shot him. This was sufficient for first-degree murder based both on premeditation and deliberation and felony murder, with attempted robbery with a firearm as the underlying felony.

## 2. Evidence— victim's prior criminal record—testimony correctly excluded

The trial court did not err in a first-degree murder prosecution by sustaining objections to defendant's cross-examination of a witness about the victim's criminal record. The record indicates that any information the witness had was second-hand and that he did not know exactly what convictions the victim had. Furthermore, defendant presented no explanation of why he was entitled to ask the witness about a subject on which he had no personal knowledge, and defendant did not make an offer of proof.

## 3. Evidence— victim's prior convictions—certified copies— offered to bolster defendant's credibility

·The trial court did not err by excluding certified copies of a murder victim's armed robbery convictions where the convictions represented specific instances of conduct being offered to prove a character trait of the victim (that he was dangerous) to bolster the credibility of defendant's testimony that he was not attempting to rob the victim when the shooting occurred. Defendant offered no authority suggesting that a desire to bolster his own credibility falls within N.C.G.S. § 8C-1, Rule 405(b).

## 4. Evidence— victim's character—evidence excluded—other evidence admitted—no prejudice

The trial court did not err in a first-degree murder prosecution by not admitting certain evidence of the victim's character

where some of the evidence suggested that the shooting happened during a robbery, and defendant testified that he would not have attempted to rob the victim because of his violent past. Defendant made no offer of proof for the excluded evidence and waived his right to challenge the rulings; even so, given the admitted evidence about the victim's gang membership, defendant's knowledge that the victim had shot people, the victim's status as a convicted felon, the victim's possession of a gun and his companion's likely possession of a gun, there was no reasonable possibility of a different verdict if the court had admitted the challenged evidence.

**5. Homicide— short-form indictment—jurisdiction obtained**

The trial court had subject matter jurisdiction pursuant to a short-form murder indictment that met the requirements of N.C.G.S. § 14-17.

Judge McGee concurring in part and dissenting in part.

Appeal by defendant from judgment entered 15 October 2007 by Judge Stuart Albright in Guilford County Superior Court. Heard in the Court of Appeals 19 November 2008.

*Attorney General Roy Cooper, by Special Deputy Attorney General Melissa L. Trippe, for the State.*

*Russell J. Hollers, III for defendant-appellant.*

BRYANT, Judge.

Defendant Kahlil Jacobs appeals from judgment entered 16 October 2007 in Guilford County Superior Court following a jury verdict finding him guilty of first degree murder based on the felony murder rule. For the reasons stated herein, we find no prejudicial error and affirm the judgment of the trial court.

*Facts*

On 20 March 2007, defendant was riding in a car with Keschia Blackwell when defendant asked Blackwell to pull over at Great Stops, a gas station and convenience store on East Market Street in Greensboro, North Carolina. Defendant saw two people he recognized—George Nichols (Nichols) and Dana Hampton (Hampton)—and got out to talk to them. Defendant approached Nichols and Hampton who were standing near Hampton's automobile which was

parked beside a gas pump. According to Blackwell, as defendant approached Nichols, Nichols "said something about man, you got me and [defendant] was like give me everything in your pocket. . . . That's what he told [Nichols]."

> So the guy, he pulled out his pocket and he was like man, I ain't got nothing but three dollars and stuff. So then after that I heard pow, pow, pow . . . . Then the tall guy [Dana Hampton], he picked up [Nichols] and put him in his car and stuff so then they drove off . . . .
>
> I seen [defendant] go running . . . and that's the last time I seen him.

Mildred Haizlip also testified for the State. She was a bystander at Great Stops when she observed three men arguing by the gas pumps. Haizlip testified that she saw "a guy get out of a car, walk up to two guys at [sic] gas pump and start[] shooting." When asked which guy, Haizlip responded "[t]he one that got out of the car with the girl."

Hampton testified that he and Nichols were friends and were at the Great Stops convenience store on 20 March 2007 for about an hour talking to people in and around the store. About that time, a burgundy car with tinted windows drove into the store parking lot. Hampton testified that the passenger in the burgundy car rolled his window down and spoke to Nichols. From previous encounters, Hampton recognized the passenger as defendant and testified to the following sequence of events:

Hampton: They had a couple of words. . . . [defendant] jumps out, [and defendant and Nichols] start conversating [sic] at the beginning of the car but it sounds like—it sounds like [sic] altercation fixing to go on.

. . .

Sounds like it was something about money . . . .

. . .

Counsel: [W]here was everyone?

Hampton: In the front of the car by the passenger's side. Like in the front of the hood.

. . .

As I'm going around the passenger's side [defendant is] walking towards the car, backing—looking back towards us.

. . .

He had his hand in his pocket the whole time. So he comes out his pocket . . . .

Counsel: Did you see him do this?

Hampton: Yes, sir.

Counsel: Okay. Could you tell what [defendant] had?

Hampton: Maybe like a small revolver.

. . .

Counsel: What did you do?

Hampton: I reached for the gun in the back seat and I start firing back.

. . .

Counsel: Okay. Did your friend [Nichols] have a handgun or any kind of gun for that matter at any point?

Hampton: No, sir, he didn't have nothing on him.

On cross-examination, defendant asked Hampton the following questions: "Did [Nichols] carry nine millimeters around with him all the time?"; "How many times have you seen [Nichols] carrying a nine millimeter?"; "Are you familiar with [Nichols] reputation in the community?"; "[W]hat do you know [Nichols] was [previously] convicted of?"; "[D]id you hear about [Nichols'] reputation?". The trial court sustained objections to each question. No offers of proof were made for the record. However, Hampton did testify that Nichols was carrying a nine millimeter the day of the shooting and had left the gun in the back seat of his car.

Defendant testified that at least three weeks prior to 20 March 2007, he sold Nichols two puppies. Nichols gave defendant a down payment of $175 but still owed defendant $350. Defendant made numerous unsuccessful attempts to collect the money Nichols owed him. Defendant testified that on two occasions prior to 20 March 2007, when he confronted Nichols about the money, Hampton was with Nichols and carrying a handgun. On each of these occasions,

when defendant discussed with Nichols the money owed him, Hampton placed his hand on his handgun. Defendant testified Hampton appeared menacing and ready to draw his gun if defendant's confrontation with Nichols escalated.

Defendant further testified that on 20 March 2007, he once again saw Nichols with Hampton at the Great Stops convenience store. Defendant again confronted Nichols about the money he was owed. The conversation became heated, and defendant testified Nichols grabbed him and yelled for Hampton to "get him." Defendant said that as Hampton reached for a weapon, defendant reached for his weapon. Defendant testified that only after hearing a gunshot did he fire two shots, then ran.

Defendant testified that he believed he was going to be shot "[b]ecause somebody [was] approaching me pulling a weapon and I'm being held by another person . . . ."

Counsel:    What was it that you knew about George Nichols that lead you to believe you were about to be shot?

. . .

Defendant: He told me he was a member of the street gang called the Crypts [sic].

Counsel:    Did he tell you he had shot people?

Defendant: Yes.

Defendant testified that prior to the day in question "[he had] always seen [Nichols] with guns," and Nichols had previously stated that he had been in prison.

On voir dire, defendant testified that Nichols had a reputation in his community. Defendant testified that Nichols had boasted to him about robberies, shootings, and drug transactions, and told defendant that he had spent time in prison. Defendant also testified that in his prior experiences with Nichols, Hampton was always present and either Nichols or Hampton if not both were always carrying a gun.

Also, out of the presence of the jury, defendant attempted to offer into evidence certified copies of Nichols' convictions for armed robbery. The trial court ruled the evidence inadmissible by stating "any alleged probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury or [at the] very minimum needless presentation of cumulative evidence

based on the testimony." At the conclusion of the evidence, the trial court denied defendant's motions to dismiss.

The jury returned a verdict of guilty of first degree murder under the felony murder rule. The trial court entered judgment and commitment on the verdict and sentenced defendant to life imprisonment without parole in the custody of the North Carolina Department of Correction. Defendant appeals.

On appeal, defendant raises four arguments: Defendant argues the trial court erred (I) in denying defendant's motions to dismiss; (II) in excluding from evidence Nichols' prior armed robbery convictions; (III) in not allowing defendant to prove Nichols' character; and (IV) in denying defendant's motion to dismiss the "short-form" murder indictment.

*I*

**[1]** In defendant's first argument, he contends the trial court erred in denying his motions to dismiss the charges against him at the close of the State's evidence and at the close of all the evidence. We disagree.

"Upon [a] defendant's motion for dismissal, the question for the [c]ourt is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of [the] defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Scott*, 356 N.C. 591, 595, 573 S.E.2d 866, 868 (2002).

> In reviewing challenges to the sufficiency of evidence, we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences. Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve. The test for sufficiency of the evidence is the same whether the evidence is direct or circumstantial or both. Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence. If the evidence presented is circumstantial, the court must consider whether a reasonable inference of [the] defendant's guilt may be drawn from the circumstances. Once the court decides that a reasonable inference of [the] defendant's guilt may be drawn from the circumstances, then it is for the jury to decide whether the facts, taken singly or

STATE v. JACOBS

[195 N.C. App. 599 (2009)]

in combination, satisfy [it] beyond a reasonable doubt that the defendant is actually guilty.

Both competent and incompetent evidence must be considered. In addition, the defendant's evidence should be disregarded unless it is favorable to the State or does not conflict with the State's evidence. The defendant's evidence that does not conflict may be used to explain or clarify the evidence offered by the State. When ruling on a motion to dismiss, the trial court should be concerned only about whether the evidence is sufficient for jury consideration, not about the weight of the evidence.

*Id.* at 596-97, 573 S.E.2d at 869 (internal and external citations and quotations omitted).

In this case, the State presented evidence that defendant approached Nichols, demanded money from him, then shot Nichols twice, resulting in Nichols' death. We hold this evidence, viewed in the light most favorable to the State, was sufficient to submit to the jury both charges against defendant: first-degree murder based upon premeditation and deliberation; and first-degree murder based upon the felony murder rule, with attempted robbery with a firearm as the underlying felony. Accordingly, defendant's assignment of error is overruled.

## II

In defendant's second argument, he contends the trial court erred in excluding evidence of Nichols' prior armed robbery conviction. Defendant argues that the trial court's failure to admit evidence of Nichols' prior convictions unfairly impeached defendant's credibility. We disagree.

Defendant attempted to elicit evidence of Nichols' prior convictions at two times: (A) during cross-examination of Dana Hampton and (B) when attempting to introduce certified copies of Nichols' two armed robbery convictions.

## A

[2] Defendant first tried to elicit evidence of Nichols' prior convictions by asking Hampton whether he knew if Nichols was a convicted felon. Hampton replied, "[h]earsay," but then testified that this information had not come from Nichols. Hampton was then asked, "Well, what do you know he was convicted of?" The trial court sus-

tained the State's objection although Hampton still responded, "I don't know exactly."

As to Hampton's testimony regarding Nichols' criminal record, the record on appeal contains no offer of proof that would suggest Hampton possessed admissible information regarding the convictions. Based on the transcript, it appears the trial court excluded Hampton's testimony regarding Nichols' convictions because Hampton indicated he did not have personal knowledge of the nature of those convictions. The record indicates, in Hampton's own words, that any information he had regarding Nichols' record was second-hand, and he, in fact, did not know "exactly" what convictions Nichols had.

Further, defendant has presented no argument explaining why he was entitled to ask Hampton about a subject on which he had no personal knowledge, and defendant made no offer of proof at trial that Hampton in fact did know of Nichols' criminal convictions. *See State v. Barton*, 335 N.C. 741, 749, 441 S.E.2d 306, 310 (1994) ("In order to preserve the exclusion of evidence for appellate review, the significance of the excluded evidence must be made to appear in the record and a specific offer of proof is required unless the significance of the evidence is obvious from the record.").

Therefore, the trial court did not err in sustaining objections to defendant's cross-examination of Hampton regarding Nichols' criminal record.

*B*

[3] With respect to the trial court's exclusion of the certified copy of Nichols' convictions for armed robbery, defendant argues the prior convictions were relevant to corroborate defendant's testimony that he would never have attempted to rob Nichols because he knew that Nichols had a prior history of violence and was likely to be armed. According to defendant, "[t]he fact that Mr[.] Nichols had been twice convicted of armed robbery made it more probable that [defendant] was telling the truth when he testified."

In this argument, defendant asserts that evidence in the form of certified copies of Nichols' prior convictions was relevant under our Rules of Evidence, Rule 401. However, defendant does not address Rule 404, which defines when character evidence or evidence of prior crimes is admissible. Rule 404(a) of our evidence rules provides that except in limited circumstances, character evidence "is not admis-

sible for the purpose of proving that [a person] acted in conformity therewith on a particular occasion[.]" N.C. R. Evid. 404(a) (2007). However, Rule 404(a)(2) provides an exception to the general rule, allowing an accused to present evidence of a "pertinent trait of character" of the victim to show the victim's conduct in conformity therewith on the occasion in question. As the leading commentator on the North Carolina Rules of Evidence has explained, this subsection sets out "an exception to the basic Rule barring evidence of character to prove conforming conduct[.]" 1 Kenneth S. Broun, *Brandis & Broun on North Carolina Evidence* § 90 (6th ed. 2004).

Rule 404(b) addresses "[e]vidence of other crimes, wrongs, or acts" and specifies that such evidence "is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." N.C. R. Evid. 404(b) (2007).

In *State v. Wilkerson*, 356 N.C. 418, 571 S.E.2d 583, *rev'g* 148 N.C. App. 310, 559 S.E.2d 5 (2002) (per curiam), our Supreme Court adopted Judge Wynn's dissent in the Court of Appeals opinion and established that certified copies of prior convictions were not admissible under Rule 404(b). *Id.* Judge Wynn concluded that "in a criminal prosecution, the State may not introduce prior crimes evidence under rule 404(b) by introducing the bare fact that the defendant was previously convicted of a crime . . . ." *State v. Wilkerson*, 148 N.C. App. 310, 327, 559 S.E.2d 5, 16 (2002) (Wynn, J. dissenting). While evidence of "the facts and circumstances underlying the conviction" might be admissible under Rule 404(b), evidence of the bare fact of a conviction is admissible only under Rule 609. *Id.* at 321, 559 S.E.2d at 12.

In light of this, we cannot discern any meaningful basis for distinguishing the admission of prior convictions of a defendant and the admission of prior convictions of a victim. Thus, we hold that the certified copies of Nichols' prior convictions were inadmissible under Rule 404(b). Rule 609, allowing admission of evidence of prior convictions "[f]or the purpose of attacking the credibility of a witness" does not, of course, apply since Nichols was deceased and not a witness. *See* N.C. R. Evid. 609(a) (2007).

Rule 404(a) permits evidence of "a pertinent trait of character of the victim of the crime[.]" N.C. R. Evid. 404(a) (2007). Rule 405

addresses the method by which this character trait may be proven. Evidence Rule 405 provides:

> (a) Reputation or opinion.—In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct. Expert testimony on character or a trait of character is not admissible as circumstantial evidence of behavior.

> (b) Specific instances of conduct.—In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct.

N.C. R. Evid. 405 (a) and (b) (2007). Nichols' convictions represent specific instances of conduct being offered to prove a trait of character of Nichols—presumably that Nichols was dangerous.

However, defendant has not demonstrated that Nichols' dangerousness was "an essential element of a . . . defense." N.C.R. Evid. 405(b). Defendant in fact acknowledges that Nichols' prior convictions were not being offered to show Nichols acted violently on 20 March 2007 or that defendant was acting in self-defense as a result of any actions by Nichols. Instead, defendant argues the prior convictions were relevant and admissible to enhance his own credibility, to corroborate his own testimony that he was not attempting a robbery of Nichols due to Nichols' violent past. Defendant has cited no authority suggesting that a simple albeit fervent desire to bolster his own credibility falls within the scope of Rule 405(b), and we have found none.

Therefore, we hold the trial court did not err in excluding the certified copies of Nichols' armed robbery convictions. Accordingly, this assignment of error is overruled.

*III*

**[4]** Defendant next argues the trial court erred in not admitting evidence of Nichols' character. We disagree.

On cross-examination of Hampton, defendant asked whether Hampton was "familiar with [Nichols'] reputation in the community" and whether Hampton had "hear[d] about his reputation[.]" Defendant also asked whether Nichols "carr[ied] nine millimeters

around with him all the time[.]" The trial court sustained the State's objections to each question.

Defendant made no offer of proof following any of these rulings, and therefore, this Court has no basis upon which to ascertain the admissibility of this evidence. Thus, defendant has waived his right to challenge these rulings on appeal. *State v. Stiller*, 162 N.C. App. 138, 142, 590 S.E.2d 305, 307 (2004) ("To prevail on a contention that evidence was improperly excluded, either a defendant must make an offer of proof as to what the evidence would have shown or the relevance and content of the answer must be obvious from the context of the questioning."). This Court has explained that "[t]he reason for such a rule is that the essential content or substance of the witness' testimony must be shown before we can ascertain whether prejudicial error occurred. In the absence of an adequate offer of proof, we can only speculate as to what the witness' answer would have been." *State v. Clemmons*, 181 N.C. App. 391, 397, 639 S.E.2d 110, 114, *aff'd*, 361 N.C. 582, 650 S.E.2d 595 (2007) (citations and internal quotations omitted).

However, even assuming *arguendo* we should address defendant's argument, we do not believe defendant has demonstrated prejudice. Defendant must show that the answers to these questions would have so bolstered the credibility of his claim—that he lacked any motive to try to rob Nichols—that there is a reasonable possibility the jury would have reached a different verdict. *See* N.C. Gen. Stat. § 15A-1443 (a) (2007) ("A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises.").

Defendant was allowed to testify that Nichols stated that "he was a member of the street gang called the Crypts [sic]" and that he had shot people in the past. Defendant further testified that whenever he saw Nichols and Hampton together either Nichols or Hampton or both had a gun. On cross-examination of Hampton, defendant was able to establish that Nichols was carrying a nine millimeter gun on the day of the shooting and had placed the gun in the back of Hampton's car. The jury also heard testimony from Hampton that both he and Nichols were convicted felons.

In other words, the only information that was excluded was the fact that Nichols had committed an armed robbery, that he had

kicked in people's doors, and that he had tied them up. In light of the evidence before the jury regarding Nichols' gang membership, defendant's knowledge that Nichols had shot people, Nichols' status as a convicted felon, Nichols' gun possession on the date of the shooting and Hampton's likely gun possession, we cannot conclude that a reasonable possibility exists that the jury would have reached a different verdict if the trial court had not sustained the State's objection and admitted the challenged evidence of Nichols' character.

This assignment of error is dismissed.

*IV*

[5] Last, defendant argues the trial court lacked subject matter jurisdiction where defendant was indicted pursuant to a short-form murder indictment. We disagree.

In *State v. Allen*, 360 N.C. 297, 626 S.E.2d 271 (2006), our Supreme Court addressed a defendant's contention that his "short-form indictment was insufficient because it failed to allege all the elements of first-degree murder." *Id.* at 316, 626 S.E.2d at 286. Our Supreme Court disagreed and reasoned as follows:

> We have consistently ruled short-form indictments for first-degree murder are permissible under N.C.G.S. § 15-144 (2005) and the North Carolina and United States Constitutions. *See State v. Mitchell*, 353 N.C. 309, 328-29, 543 S.E.2d 830, 842, *cert. denied*, 534 U.S. 1000 (2001); *State v. Davis*, 353 N.C. 1, 44-45, 539 S.E.2d 243, 271 (2000), *cert. denied*, 534 U.S. 839 (2001); *State v. Braxton*, 352 N.C. 158, 173-75, 531 S.E.2d 428, 436-38 (2000), *cert. denied*, 531 U.S. 1130, (2001); *State v. Wallace*, 351 N.C. 481, 504-08, 528 S.E.2d 326, 341-43, *cert. denied*, 531 U.S. 1018 (2000). We see no compelling reason to depart from our prior precedent on this issue. Here the indictment read: "The jurors for the State upon their oath present that on or about the 8th day of July, 1999, and in the county named above the defendant named above unlawfully, willfully and feloniously and of malice aforethought did kill and murder [victim]. Offense in violation of G.S. 14-17." As this indictment meets the requirements of N.C.G.S. § 15-144, we overrule defendant's assignment of error.

*Id.* at 316-17, 626 S.E.2d at 286.

Here, defendant was indicted for first degree murder in violation of N.C. Gen. Stat. § 14-17. The indictment read: "The jurors for the

State upon their oath present that on or about [3/20/07] and in the county named above the defendant named above unlawfully, willfully and feloniously did of malice aforethought kill and murder George Nichols, III."

As in *Allen*, we hold this short-form murder indictment meets the requirements of N.C.G.S. § 15-144. Accordingly this assignment of error is overruled.

No prejudicial error.

Judge GEER concurs.

Judge McGee concurs in part and dissents in part by separate opinion.

McGEE, Judge, concurring in part and dissenting in part.

I concur with the majority opinion that the trial court did not err in denying Defendant's motions to dismiss at the close of State's evidence and at the close of all the evidence. I further concur with the majority opinion that the trial court did not err in denying Defendant's motion to dismiss the "short form" murder indictment. I must, however, dissent from the majority opinion because I believe the trial court committed prejudicial error in refusing to admit certain evidence at trial.

In this case, the State proceeded on two theories: that Defendant was guilty of first-degree murder pursuant to (1) premeditation and deliberation; and (2) the felony murder rule, with robbery with a firearm as the underlying felony. Defendant presented evidence of self-defense for the charge of first-degree murder based upon premeditation and deliberation. Self-defense is not a defense to charges based upon the felony murder rule.

I find the evidence Defendant sought to admit clearly relevant under the permissive standard of Rule 402 and the definition of relevance articulated in Rule 401 that "any evidence calculated to throw any light upon the crime charged is admissible in criminal cases." *State v. Huffstetler*, 312 N.C. 92, 104, 322 S.E.2d 110, 118 (1984) (citations omitted).

Nichols' violent past, if known to Defendant at the time of the shooting, was relevant to Defendant's state of mind at that time. *See*

*State v. Strickland,* 346 N.C. 443, 456, 488 S.E.2d 194, 201 (1997); *State v. Gibson,* 333 N.C. 29, 42, 424 S.E.2d 95, 103 (1992), *overruled on other grounds by* 334 N.C. 402, 432 S.E.2d 349 (1993); *State v. Poole,* 154 N.C. App. 419, 426, 572 S.E.2d 433, 438 (2002). For example: Defendant's fear of Nichols and Hampton based upon Defendant's testimony, before the jury and on *voir dire,* that whenever Defendant saw Nichols and Hampton they were carrying guns; that Defendant had felt threatened by Nichols and Hampton in prior interactions with them; that Defendant feared one or both of them might shoot him if an altercation were to escalate; and that Defendant would be afraid to attempt to take anything from Nichols by force because he knew Nichols and Hampton regularly carried guns and because of their threatening manner toward him.

Therefore, evidence of Nichols' reputation or character, given through opinion testimony, was admissible under Rule 404(a), pursuant to the restrictions of Rule 405(a). Rule 404(a) states: "Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except: . . . (2) . . . Evidence of a pertinent trait of character of the victim of the crime offered by an accused[.]" N.C. Gen. Stat. § 8A-1, Rule 404(a). Rule 405(a) states: "Reputation or opinion.—In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion." N.C. Gen. Stat. § 8A-1, Rule 405(a) (2007).

Prior specific acts of Nichols were admissible, to the extent Defendant was aware of them, pursuant to Rule 404(b).

> Where, as in this case, a defendant seeks under Rule 404(b) to use *evidence of a prior violent act by the victim to prove the defendant's state of mind at the time he killed the victim,* the defendant must show that he was aware of the prior act and that his awareness somehow was related to the killing.

*Strickland,* 346 N.C. at 456, 488 S.E.2d at 201. (emphasis added) (holding that the exclusion of evidence of the victim's prior bad acts pursuant to 404(b) was not an abuse of discretion because the defendant never argued self-defense, and on the facts of the case the defendant's mental state concerning the victim's dangerousness was not an issue); *see also State v. Smith,* 337 N.C. 658, 666, 447 S.E.2d 376, 380-81 (1994) (stating that had the evidence the defendant sought to admit about the victim's prior threatening acts been closer in time

to the acts for which the defendant was charged, this evidence might have been admissible pursuant to Rule 404(b)). "Rule 404(b) is a rule of inclusion, subject to the single exception that such evidence must be excluded if its *only* probative value is to show that [a] *defendant* has the propensity or disposition to commit an offense of the nature of the crime charged." *State v. Berry*, 356 N.C. 490, 505, 573 S.E.2d 132, 143 (2002) (emphasis added). I note that by the language of *Berry*, this sole exclusion is limited to 404(b) evidence sought to be entered into evidence against a defendant, not a victim. I have been unable to locate any appellate opinion of this State applying the same language to evidence sought to be admitted pursuant to 404(b) concerning a victim.

Pursuant to Rule 404(a) through Rule 405(b), evidence of Nichols' prior acts was admissible to the extent that these prior acts were relevant to Defendant's state of mind in relation to his claim of self-defense for the premeditated first-degree murder charge, and in relation to the element of intent in the underlying felony of robbery with a firearm for the felony murder charge. *Gibson*, 333 N.C. at 42, 424 S.E.2d at 103 (1992); *Poole*, 154 N.C. App. at 426, 572 S.E.2d at 438. Even had Defendant been unaware of Nichols' prior convictions, they may have been admissible to bolster Defendant's self-defense argument at trial that Nichols was the first aggressor. *See State v. Hager*, 320 N.C. 77, 85, 357 S.E.2d 615, 620 (1987); *State v. Everett*, 178 N.C. App. 44, 51, 630 S.E.2d 703, 708 (2006) (quoting *State v. Winfrey*, 298 N.C. 260, 262, 258 S.E.2d 346, 347 (1979)).

The fact that the jury did not convict Defendant of first-degree murder based upon premeditation in no manner affects the analysis concerning whether the trial court erred in excluding evidence admissible in support of Defendant's self-defense argument *at trial*. This evidence could only be excluded based upon a proper discretionary ruling by the trial court that the evidence ran afoul of the Rule 403 balancing test.

Defendant testified that he had known Nichols for three or four months prior to the shooting. Defendant was asked by his trial counsel if Nichols had a reputation in the community. The State objected, and a lengthy *voir dire* of Defendant ensued. During this *voir dire*, Defendant testified to the following: Prior to the shooting, Nichols told Defendant that he had robbed and shot people; that he had spent time in prison; that he was in the Crips street gang; and that he sold drugs. Because of the context of the conversation, Defendant assumed that Nichols had been in prison for robbing and shooting peo-

ple. Defendant stated that whenever he saw Nichols, Nichols had a gun, and that

> every time I would talk to [Nichols] [Hampton] would be like standing behind [Nichols] with his hand on the gun like he's about to try to shoot me if the situation don't go the way they want it to go, if it get out of hand or something. . . . I was really nervous because [Hampton] might try to shoot me. He got a gun. Every time come around, me and [Nichols] talk, and our voice raise he seem like he's about ready to jump in it.

Concerning the night of the shooting, Defendant testified in *voir dire* that Nichols' reputation made Defendant "cautious" and "kind of nervous" because he knew that Nichols had shot people before, and Defendant worried that he might get shot if a confrontation between him and Nichols over the money Nichols owed got out of hand. Defendant testified that he did not threaten Nichols because he knew "[i]t's two to one. I wouldn't start no trouble with two men that I know carry guns. No, that's crazy." Defendant stated that Nichols raised his voice and threatened Defendant, that Nichols said he didn't have to give Defendant any money, and that he would "beat" or "shoot" Defendant. Defendant further testified that what finally made him fearful for his life that night was when Nichols "grabbed me and said ['][Hampton], get him[']" and Hampton came around the car, "went for his waist and pulled the weapon."

Defendant testified that he tried to run away, but that Nichols was holding him and Hampton was reaching for his gun. Defendant heard a shot, so he shot Nichols in the leg in order to get away. Defendant testified that he shot one more time as he was falling away from Nichols, then put his gun away and ran as Hampton continued to shoot at him. Defendant stated that he ran because he had no intention of being involved in a shoot-out, he just wanted to get away, and that when he did fire the gun, he was in fear of being killed. Following *voir dire*, the trial court ruled that "if [Defendant] lays a proper foundation . . . the proffered testimony for the most part would all be admissible."

Defendant argues that the trial court erred in sustaining the State's objections to certain of Defendant's questions at trial. The State's objections to Defendant's questions were general objections. According to the North Carolina Rules of Appellate Procedure, Rule 10(b)(1): "In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or

motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." The State did not state the specific grounds for its objections to the solicited testimony, and the trial court did not state the basis upon which it sustained those objections. However,

> [see] *State v. Morgan*, 315 N.C. 626, 640, 340 S.E.2d 84, 93 (1986) where Justice Meyer, speaking for the Court, said in reference to the offer of evidence under [Rule] 404(b). . . .: "[The rule requires] the trial judge, prior to admitting extrinsic conduct evidence, to engage in a balancing, under Rule 403, of the probative value of the evidence against its prejudicial effect. The better practice is for the proponent of the evidence, out of the presence of the jury, to inform the court of the rule under which he is proceeding and to obtain a ruling on its admissibility prior to offering it."

*State v. McKoy*, 317 N.C. 519, 524-25, note 1, 347 S.E.2d 374, 378, note 1 (1986). "Whether to exclude evidence under Rule 403 is a matter within the sound discretion of the trial court." *State v. Cotton*, 318 N.C. 663, 668, 351 S.E.2d 277, 280 (1987). "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403.

Defendant objects to the following rulings of the trial court concerning Defendant's testimony: (1) excluding evidence of any specific instances of violence committed by Nichols, and (2) excluding evidence of whether Defendant had ever had any "problem" with Nichols in the past. Concerning the first issue, Defendant's counsel first asked Defendant "[w]hat specific instances of violence" Defendant knew Nichols had committed in the past. The State objected and the trial court sustained the objection. Defendant's counsel attempted to ask this question again in a different way, but the State's objection was again sustained. Defendant was then allowed to testify that Nichols "told me that he had shot people before. He's been to prison before. He done armed robbery, told me he had kicked in people door, tied them up." Following this testimony, the State made a general objection, and the objection was sustained.

The record does not show the basis for the State's objection nor whether the State was objecting to all or part of this testimony. The

State did not move to strike the testimony. Defendant was later allowed to testify that Nichols had told him he had shot people in the past, but Defendant did not get the opportunity to testify that Nichols had told him he had been to prison and had committed armed robberies. Nonetheless, when Defendant's counsel later asked Defendant if Nichols had told him Nichols had "robbed and shot people," the State objected on the grounds that the question had been asked and answered, and the trial court sustained the objection.

As to the second issue, Defendant failed to make any offer of proof following the trial court's ruling. However, Defendant's *voir dire* testimony makes clear problems Defendant had with Nichols in the past, including testimony that whenever Defendant saw Nichols, Nichols had a gun, and that

> every time I would talk to [Nichols] [Hampton] would be like standing behind [Nichols] with his hand on the gun like he's about to try to shoot me if the situation don't go the way they want it to go, if it get out of hand or something. . . . I was really nervous because [Hampton] might try to shoot me. He got a gun. Every time come around, me and [Nichols] talk, and our voices raise he seem like he's about ready to jump in it.

In a different part of his testimony, Defendant was allowed to testify to Hampton's menacing presence in Defendant's prior dealings with Nichols, and the fact that Defendant always saw Hampton with a gun, but Defendant did not get the opportunity to testify that Nichols was carrying a gun every time Defendant had seen Nichols in the past.

I cannot, upon review of the record, identify any reasoned ground upon which this excluded testimony would lead to confusion of the issues, misleading of the jury, or cause undue delay, waste of time, or needless presentation of cumulative evidence. Further, because this testimony is relevant and probative to issues at trial, namely Defendant's state of mind relating to his fear of Nichols and Defendant's perceived need to defend himself, and his alleged intent to rob Nichols by use of a firearm—and because I find no significant danger of unfair prejudice—I would hold the trial court abused its discretion in excluding this testimony. These rulings of the trial court are also confusing in light of its prior ruling following *voir dire* that "the proffered testimony for the most part would all be admissible."

Further, by preventing this line of questioning at trial, I also find a substantial possibility that Defendant was prevented from testify-

ing, as he had testified in *voir dire*, that in light of his previous dealings with Nichols, he would be "crazy" to attempt to rob Nichols, having reason to believe both Nichols and Hampton were armed, and that both men were capable, if not likely, of reacting with gunfire to aggression on Defendant's part.

Defendant also specifically argues that the denial of his motion to introduce into evidence records concerning Nichols' two convictions for armed robbery constituted error. The trial court ruled:

> I don't think they're relevant. I don't think they're admissible. To the extent they are relevant under Rule 403, the [c]ourt would find that any alleged probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury or very minimum needless presentation of cumulative evidence based on the testimony.

The trial court did not offer any further insight into its ruling. There is no further guidance as to why the trial court, after considering the evidence before it, believed the records of Nichols' prior convictions were not relevant and ran afoul of Rule 403.

I would first hold that Nichols' prior convictions were relevant. As I indicated above, I believe it was error to exclude Defendant's testimony that Nichols had told Defendant he had robbed people and spent time in prison. Defendant testified that Nichols told him he had shot people. Defendant's testimony was the only evidence allowed at trial that Nichols had shot and robbed people and, along with Hampton's testimony that he had heard Nichols was a convicted felon through "hearsay" and not from Nichols himself, it was the only evidence that Nichols had served time in prison. Evidence of Nichols' prior criminal history for violent crime was clearly relevant to issues at trial. Such evidence would tend to corroborate Defendant's testimony that Nichols was the first aggressor and would bolster Defendant's self-defense claim in that: (1) Defendant testified he knew Nichols had shot people, (2) Defendant's testimony that he knew Nichols had robbed people and had spent time in prison should have been admitted, and (3) Defendant's testimony evinced his fear that Nichols was armed and might shoot him on the night in question.

Evidence of Nichols' prior convictions would further bolster Defendant's defense that he had no intent to rob Nichols, again because of Defendant's testimony that he knew Nichols to be a dan-

gerous man—a man who had informed Defendant that he had shot people in the past.

Therefore, because this evidence was relevant, it was admissible pursuant to either Rule 404(b), or Rule 404(a) through Rule 405(b), unless properly excluded pursuant to Rule 403. I find no reasoned justification for excluding this evidence pursuant to Rule 403 based upon confusion of the issues, misleading the jury, or needless presentation of· cumulative evidence. Concerning whether the probative value of this evidence is substantially outweighed by the danger of unfair prejudice, I find little risk of prejudice on these facts as Hampton was allowed to testify that he believed Nichols to be a convicted felon. Further, I would hold that Defendant's testimony that Nichols had informed Defendant that Nichols had shot and robbed people in the past, and had served time in prison, should have been allowed to remain in evidence.

Concerning probative value, because Defendant was the *only* witness who testified that Nichols had told him he had shot and robbed people, and because the jury could easily decide this testimony was self-serving, Nichols' prior record of armed robbery was the *only* potential evidence at trial that could have corroborated Defendant's testimony and served to lend it credibility. This objective evidence of Nichols' violent past could have substantially mitigated the potential that the jury would dismiss Defendant's testimony as self-serving, and thus support Defendant's stated fear of Nichols.

This Court in *Everett*, 178 N.C. App. 44, 630 S.E.2d 703, ordered a new trial based on these same concerns. In *Everett*, the defendant was accused of murdering her husband, but claimed she acted in self-defense. A salesman at an automobile dealership called the defendant before the killing and informed her that her husband had come to the dealership and smashed out the windows of certain cars on the lot. The defendant testified at trial concerning the incident at the dealership. The defendant attempted to call the salesman at trial to testify about the incident as well, but the trial court sustained the State's objection, stating it found no relevance in the proposed testimony. Two of the defendant's family members and one of the defendant's friends were allowed to testify in support of the defendant's self-defense claim concerning violent acts they had witnessed the victim commit. This Court held that not only was the trial court's decision not to allow the salesman to testify error, it was prejudicial error, stating:

The jury in this case heard testimony from the following defense witnesses: defendant; John Rowland, defendant's father; Adele Rowland, defendant's mother; and Iris Bryant, defendant's friend. All of these witnesses were either parents of or closely associated with defendant. [The salesman] was the only witness defendant tendered at trial not closely associated with defendant.

[The salesman] witnessed the victim's violent acts first hand. [His] testimony would have provided the jury with the only evidence from a neutral source of the victim's violent character, a crucial element of defendant's claim of self-defense. The trial court erred in excluding [the salesman's] testimony regarding the incident at the car dealership to show the victim's propensity for violent behavior. This error was prejudicial in light of defendant's assertion of self-defense, [the salesman] being defendant's only neutral witness, and defendant's testimony regarding the car dealership incident possibly being viewed by the jury as self-serving.

*Everett,* 178 N.C. App. at 53-54, 630 S.E.2d at 710.

Regarding unfair prejudice under Rule 403, on these facts it is unclear who would be prejudiced by the admission of Nichols' prior convictions. As previously stated, the contention that Nichols was a convicted felon was already presented to the jury in the form of testimony. Any danger that the jury would be prejudiced against Nichols, and determine that Nichols had only "gotten what he deserved" was already present. Admission of the prior criminal record would not have introduced this danger of prejudice, but would have helped to confirm and validate Defendant's testimony, bolster his credibility, and lend weight to his claims of self-defense and lack of intent to rob Nichols.

Further, "when the witness is the accused, the balancing requisite for [Rule 404(b)] reflects the concern that the extrinsic evidence not reflect more upon the defendant's propensity to commit the kind of offense for which he is being tried than upon the particular purpose of the rule invoked." *State v. Carter,* 326 N.C. 243, 250, 388 S.E.2d 111, 116 (1990). This statement reflects the logical conclusion that the predominating concern regarding prejudice when ruling on the admission of Rule 404(b) evidence is prejudice to the accused, that the jury may be more likely to convict on weaker evidence if it knows that the accused has committed similar or violent acts in the past.

The majority cites Judge Wynn's dissent in *Wilkerson*, adopted by our Supreme Court, in support of its position that the certified copies of Nichols' prior convictions were properly excluded. I do not find *Wilkerson* controlling in the instant case. Judge Wynn's concern in *Wilkerson* was that the admission of the bare fact of a defendant's prior conviction pursuant to Rule 404(b), to show intent, for example, would be inherently prejudicial to that defendant:

> An unchallenged basic tenet of criminal law is that the State must prove defendant's guilt beyond a reasonable doubt. Fundamentally, this means that the State may not prove such guilt by showing that because another jury found the defendant guilty of an unrelated crime in the past, he is therefore guilty in the present case. Nor may the State prove guilt by showing that the fact that an earlier jury convicted the defendant is proof of his intent, motive, knowledge, etc. under Rule 404(b)[.]

*Wilkerson*, 148 N.C. App. at 319, note 1, 559 S.E.2d at 11, note 1. None of Judge Wynn's concerns are implicated in the present case, because the evidence the trial court rejected was not prior convictions of *Defendant*. Judge Wynn's holding is quite clear and targeted: "I would hold that in a criminal prosecution, the State may not introduce prior crimes evidence under Rule 404(b) by introducing the bare fact that *the defendant* was previously convicted of a crime[.]" *Id.* at 327, 559 S.E.2d at 16 (emphasis added). None of Judge Wynn's concerns apply where the prior conviction evidence concerns the victim. The admission of this evidence would have furthered the goal of putting the State to its burden of proving Defendant's guilt beyond a reasonable doubt, not abrogated it. Further, as Judge Wynn noted, there are exceptions to the general rule articulated in his adopted dissent, *even where prior convictions are admitted against a defendant. Id.* at 327-28, 559 S.E.2d at 16. I strongly disagree with the statement of the majority suggesting there is no "meaningful basis for distinguishing the admission of prior convictions of a defendant and the admission of prior convictions of a victim."

Further, *Wilkerson* does not involve Rule 404(a) and Rule 405(b), which, together, allow "evidence of a pertinent trait of character of the victim of the crime offered by an accused[,]" in the form of "[s]pecific instances of conduct . . . [i]n cases in which character or a trait of character of a person is an essential element of a charge . . . or defense[.]" Nichols' violent character was an essential element of both Defendant's self-defense claim, and the element of intent in the robbery with a firearm charge supporting the felony murder con-

**STATE v. JACOBS**

[195 N.C. App. 599 (2009)]

viction, as Defendant testified he was aware of Nichols' violent character before the shooting. *See Everett*, 178 N.C. App. at 51-52, 630 S.E.2d at 708; *see also State v. Brown*, 120 N.C. App. 276, 462 S.E.2d 655 (1995).

In light of these considerations, I would hold that the trial court abused its discretion in excluding the prior record of Nichols. This evidence was relevant and probative to the issue of the reasonableness of Defendant's fear of Nichols, thus bolstering his claim of self-defense—that he was in fear for his life when he shot Nichols—and that Nichols was the first aggressor. The excluded evidence was also relevant and probative for Defendant's argued lack of intent to rob or shoot Nichols. *See* Rules 404(a)(2), 404(b) and 405(b).

I further believe that Defendant was prejudiced by the exclusion of the above evidence.

A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant.

N.C. Gen. Stat. § 15A-1443(a) (2007). In order to determine whether the trial court's errors were prejudicial, they must be examined within the context of all the evidence presented at trial. The jury decided that Defendant was not guilty of premeditated first-degree murder, but found Defendant guilty of first-degree murder based upon the felony murder rule. The underlying felony supporting this verdict was a determination by the jury that Defendant had committed attempted robbery with a firearm against Nichols, which led to Nichols' shooting death. I find the State's evidence that Defendant committed attempted robbery with a firearm minimal, and open to multiple interpretations.

The entirety of this evidence is testimony from some witnesses that Defendant fired first, that Nichols owed Defendant money which Nichols had not paid, and the testimony of Blackwell that she heard Defendant tell Nichols "man, you got me and [Defendant] was like give me everything in your pocket." Blackwell further testified that Nichols "pulled out his pocket and he was like man, I ain't got nothing but three dollars. . . ."[1] Blackwell then testified that she heard

---

1. This testimony of Nichols' response is corroborated by the three dollars found in Nichols' pocket by Elizabeth Carter, the crime scene investigator.

gunfire, but she did not see who was shooting. Hampton, who was with Nichols at the time of the shooting, testified that Defendant and Nichols seemed to be in an argument, and he thought he heard the word "money" mentioned.

Blackwell testified that she was watching what transpired in the side-view mirror of her car, which was parked in front of the Great Stops gas station and convenience store. She testified that Defendant, Nichols, and Hampton were all talking together and that Defendant was facing her, and the two other men had their backs to her. This would mean that Defendant was facing Great Stops, and the two other men were between Defendant and Great Stops, with their backs to the store. This testimony conflicts with other witnesses who placed the three men in different locations at the time of the shooting. Blackwell further testified that she heard three initial shots fired, and she believed "about two more shots" followed those initial shots. The evidence at trial tends to show that Defendant only fired twice. Blackwell's testimony could be interpreted to bolster Defendant's account, which was that Hampton fired at Defendant once, then Defendant fired towards Nichols twice before Defendant ran away. It also contradicts evidence of the total number of shots fired by Hampton, as other witnesses testified that Hampton fired more than two or three times, and eight spent shell casings were located at the scene. Defendant's gun was a revolver, which would not have ejected any casings at the scene.

As has been previously stated, the felony underlying Defendant's conviction for felony murder was attempted robbery with a firearm. One of the essential elements of attempted robbery with a firearm is felonious intent. *Poole*, 154 N.C. App. at 426, 572 S.E.2d at 438.

It is clear from the facts that Defendant did not take any personal property from Nichols. Therefore, Defendant's conviction rests entirely upon the question of whether the State proved beyond a reasonable doubt that Defendant was attempting to take personal property from Nichols when Defendant pulled and used his handgun.

The State's evidence could be interpreted in a number of ways. The fact that Blackwell testified that Defendant asked Nichols for everything Nichols had in his pockets could be interpreted as a robbery demand. However, there is no evidence that at the time the demand was made, Defendant had drawn his handgun or had threatened to use it. There is no evidence that Nichols was aware Defend-

ant was in possession of any firearm at that time. Defendant's demand could quite logically be interpreted as a demand for the money Nichols owed him. Defendant testified he had asked Nichols in person twice before for the money owed, without any intent to resort to violence, and no evidence was presented suggesting Defendant had threatened Nichols at these previous meetings.

According to Blackwell's testimony, Nichols told Defendant he only had three dollars, and turned out his pockets to prove his point. Three dollars was recovered from Nichols' person after his death. It is feasible that Defendant believed Nichols had more money somewhere on his person, or in Hampton's automobile, and drew his gun in an attempt to take that money. It is just as possible that Defendant made a demand for the money Nichols owed him, Nichols said he did not have it, Defendant was angered, the argument escalated, and ended up in gunfire. This interpretation of the events does not lead to a conclusion that Defendant attempted to rob Nichols, whether it was Defendant or Hampton who drew the first firearm or fired the first shot.

Defendant testified to the jury or in *voir dire* that he feared both Nichols and Hampton could be armed, that he knew Nichols had committed violent acts in the past, and that he believed Hampton was very willing to resort to violence to protect Nichols. If the jury found this testimony to be credible, it would have seriously weakened the rationale underpinning the State's case for attempted robbery with a firearm. Why would Defendant attempt to rob Nichols when there was a high likelihood Nichols had very little cash, and that any aggression on Defendant's part was likely to result in two men confronting Defendant with firearms. As Defendant stated in *voir dire*, attempting robbery in those circumstances would have been "crazy."

Further, if one is going to attempt a robbery in a public place, shooting the intended victim before obtaining the victim's money would be an ill-conceived plan. Once shots are fired, the would-be robber has drawn attention to himself of the most unwanted kind. Logic would dictate that the threat of violence, used to direct a victim to produce whatever money he might have, would yield a much higher possibility of success than killing the victim in a public place and having to make a search of the victim and an automobile while law enforcement was en route. Further, once shots were fired, witnesses, who may otherwise not have been paying attention, would have a greater interest and opportunity to identify suspects.

Even accepting *arguendo* that Defendant fired first, this evidence could be viewed as an attempt to get away from Nichols and Hampton, even if the jury determined Defendant's fear of Nichols and Hampton was not reasonable under the circumstances. This evidence could also be interpreted as an angry reaction to the wrong Defendant perceived Nichols had done to him, the fact that Nichols only had three dollars on his person, and Defendant's belief that Nichols would never pay Defendant the money owed—an act of passion and revenge. Both of these scenarios are inconsistent with an intent to rob Nichols.

Determination of these issues and assessing the credibility of the witnesses is, of course, the province of the jury. However, the strength of the evidence against Defendant, which includes alternate theories of guilt or innocence, must be evaluated in making a determination of prejudice. Based upon the evidence admitted at trial, I cannot say that there was not a "reasonable possibility that, had the error[s] in question not been committed, a different result would have been reached at the trial . . . ." N.C. Gen. Stat. § 15A-1443(a).

In this case, the State's key evidence supporting robbery with a firearm is testimony that Defendant demanded that Nichols give him everything Nichols had in his pockets because Nichols owed Defendant money, and therefore Defendant's demand could easily be interpreted as a claim of right. *See State v. Spratt*, 265 N.C. 524, 526-27, 144 S.E.2d 569, 571-72 (1965). Though Defendant did not argue claim of right as a defense at trial, consideration of Defendant's claim that he was owed money by Nichols was evidence to be considered by the jury, and weighed in the jury's deliberations concerning the element of intent to rob Nichols. The evidence presented at trial concerning the sequence of events leading up to the shooting of Nichols is at least as suggestive of an act of passion and revenge, or fear—whether reasonable or not—as it is of an intent to rob Nichols.

In light of the equivocal nature of the evidence produced by the State in support of its charge of felony murder based upon attempted robbery with a firearm, the credibility of the witnesses, and that of Defendant in particular, was of great importance. Due to the errors I believe were committed by the trial court, Defendant was only allowed to produce evidence of his state of mind through his own testimony. This testimony is far less persuasive than objective evidence, as the jury is likely to interpret it as self-serving. Defendant's *voir dire* testimony that whenever he saw Nichols, Nichols was carrying a firearm, though also self-serving, was highly relevant to any consid-

eration of Defendant's state of mind and intent at the time of the shooting. Defendant's *voir dire* testimony that he would be "crazy" to attempt to rob two men he believed to be armed and dangerous, which was likely excluded from evidence due to the trial court's sustaining of the State's objections, would have also provided the jury important evidence to consider concerning Defendant's intent at the time of the shooting. Evidence that Nichols had served prison time for two previous robberies with a firearm would have been the *only* objective evidence presented concerning Nichols' violent past, and would have thus provided objective corroborative evidence of Defendant's testimony concerning his fear of Nichols, and Defendant's testimony that Nichols had personally informed Defendant that he had robbed and shot people, and served time in prison. *See Everett*, 178 N.C. App. at 54, 630 S.E.2d at 709 ("[The witness'] testimony would have provided the jury with the only evidence from a neutral source of the victim's violent character, a crucial element of the defendant's [defense].").

Had this evidence been admitted at trial, on these facts, it could have made the difference in the jury's deliberations concerning Defendant's intent to rob Nichols. I would hold that had this evidence been admitted, there is a reasonable possibility that the outcome of the trial would have been different. I would reverse and remand to the trial court for a new trial.